```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
```

```
THAD TATUM                                      CIVIL ACTION

VERSUS                                          NO: 15-2508

NEW ORLEANS CITY PARK                           SECTION: "J" (3)
IMPROVEMENT ASSOCIATION
```

### ORDER AND REASONS

Before the Court is a *Motion for Partial Summary Judgment* **(Rec. Doc. 24)** filed by Plaintiff, Thad Tatum ("Plaintiff"), and an *Opposition* thereto **(Rec. Doc. 25)** filed by Defendant, New Orleans City Park Improvement Association ("Defendant"). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED in part and DENIED in part.**

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff Thad Tatum is a New Orleans resident and a paraplegic who uses a wheelchair for mobility. Plaintiff visited Tad Gormley Stadium in New Orleans City Park on June 21, 2015 to watch a soccer game with his nephew. Plaintiff alleges that he experienced "serious difficulty" in using the Stadium's services and accommodations due to architectural barriers. Plaintiff alleges that he encountered the following barriers: (1) a lack of accessible designated parking spaces, (2) a ticket counter too

1

high from the ground, (3) a lack of an accessible route to the ticketing area, (4) a noncompliant restroom, (5) a lack of designated accessible ticketing or seating area, and (6) a lack of a sufficiently smooth accessible route for wheelchair access. Plaintiff claims that Defendant New Orleans City Park Improvement Association is responsible for the Stadium.

Plaintiff filed suit on July 8, 2015, alleging violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. On November 20, 2015, Plaintiff's expert, Nicholas Heybeck, inspected the Stadium for barriers affecting persons with mobility-related disabilities. Plaintiff claims that Heybeck identified fifty architectural barriers that violate the ADA regulations set forth by the Department of Justice. Heybeck also determined that the fifty barriers could be remedied without significant difficulty or expense. Plaintiff filed the instant motion on April 5, 2016. Defendant opposed the motion on April 12.

## PARTIES' ARGUMENTS

In his motion, Plaintiff first argues that he has standing to bring an action. Second, Plaintiff argues that Defendant is responsible for the Stadium as part of its mission to promote athletics and is subject to Title II of the ADA. Plaintiff claims that Defendant is liable to him under three standards: (1) the new construction or alteration standard; (2) the path of travel alteration requirement, and (3) the program access standard.

2

Plaintiff argues that he is entitled to summary judgment on his ADA claim because it is undisputed that Defendant is in violation of Title II of the ADA.

In its opposition, Defendant argues that genuine issues of material fact preclude the Court from granting summary judgment on Plaintiff's ADA claim. Defendant argues that Plaintiff must prove that his requested accommodations are reasonable under the ADA and the Rehabilitation Act. Defendant introduces the affidavit of its expert witness, Kirk Tcherneshoff. Tcherneshoff disagrees with Heybeck's assessments as to items 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 26, 46, 48, and 50. Tcherneshoff believes that some of the claimed violations do not actually violate the ADA and disagrees with Heybeck's recommendations as to those items. Tcherneshoff also disagrees with Heybeck's recommendations as to items 17, 19, 33, 37, 40, and 49. Thus, Defendant argues that summary judgment is inappropriate, at least as to the enumerated items.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069,

3

1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the

4

record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Title II of the ADA covers discrimination in the provision of public services. 42 U.S.C. §§ 12131, *et seq*. The parties do not dispute that Title II applies. "A disabled plaintiff can succeed in an action under Title II if he can show that, by reason of his disability, he was either excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was otherwise subjected to discrimination by any such entity. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (internal quotation marks omitted). The ADA's definition of discrimination includes "a

failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The term "existing facilities" includes structures built prior to the ADA taking effect on January 26, 1992 that have not been modified since then. *Tatum v. Doctor's Associates, Inc.*, No. CV 14-2980, 2016 WL 852458, at *3 (E.D. La. Mar. 4, 2016). A more stringent standard applies to structures that have undergone alterations after the 1992 effective date. *Id.* Because Plaintiff claims violations in both altered and existing structures, the Court will address each standard in turn.

**I.   The new construction or alteration standard**

When existing places of public accommodation are altered after the 1992 effective date, the alterations "shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible and usable by individuals with disabilities, including individuals who use wheelchairs." 28 C.F.R. § 36.402(a)(1). However, a public entity need not fully comply with the heightened standard if it can demonstrate that doing so would be structurally impracticable. 28 C.F.R. § 35.151(a)(2)(i). Full compliance will be considered structurally impracticable "only in those rare circumstances when the unique characteristics of terrain prevent the incorporation of accessibility features."

Plaintiff contends that the Stadium's parking lots (items 1-4 and 17-19 of Heybeck's report), concession stands (item 13), restrooms (items 20-24, 26-32, 35-39, and 41-45), and drinking fountains (items 33 and 40) were altered after January 26, 1992. Further, Plaintiff argues that these facilities were not readily accessible and usable for him. Defendant does not dispute that the heightened standard applies to these facilities. For the most part, Defendant does not contest that the facilities were noncompliant. However, Defendant contests the following items in Heybeck's report: items 2, 4, 17, 19, 26, 33, 37, and 40. Plaintiff's report provides prima facie evidence that the facilities were noncompliant. Thus, Defendant must produce evidence to show that a person using a wheelchair could access the facilities in a manner comparable to a nondisabled person. *Tatum*, 2016 WL 852458, at *6. Alternatively, Defendant may defeat summary judgment by showing that full compliance would be structurally impracticable.

Items 2 and 4 address the parking lot on the east side of the Stadium off Marconi Drive. According to Heybeck, "The southern most [sic] access aisle has a width of 54 inches in lieu of a minimum of 60 inches. The next access aisle to the north has a width of 57 inches in lieu of 60 inches. The northernmost access aisle is adjacent to the northernmost parking space which is designed van accessible. The measured space is 109 inches wide and the access aisle is 91 inches wide. The minimum space for van space

is 96 inches wide with a 96 inch access aisle or 132 inches wide with 60 inch access aisle." (Rec. Doc. 24-7, at 3.) Heybeck also opines that "the accessible designated parking is currently not along the shortest and direct route to the facility entrance." *Id.* at 7. Heybeck bases this opinion on information from Plaintiff's counsel, who believed that "Gate 5A is not opened during an event and therefore the only route from the parking facility is to the north along the public sidewalk along Marconi Drive and into the main entrance for the [S]tadium." *Id.* However, Tcherneshoff opines that the parking space and access aisle are 200 inches wide combined, which provides greater access than the new construction standard. (Rec. Doc. 26-1, at 1-2.) Further, Tcherneshoff states that the Stadium will keep Gate 5A open for all events, making Heybeck's recommended changes unnecessary. *Id.* at 2.

Items 17 and 19 involve the interior parking facility outside the Stadium. Heybeck finds that the accessible parking at the interior of the Stadium gates does not include the required vertical vehicular identification signage. (Rec. Doc. 24-7, at 34.) He recommends that signage be installed for every accessible parking facilities. *Id.* Heybeck also reports that the parking spaces do not have a route to the facility "due to non-compliant changes in level at the access aisles to the sidewalk. The change in level or curb height is 2 inches." *Id.* at 38. He recommends that Defendant provide curb ramps to the marked access aisles. *Id.*

8

As to item 17, Tcherneshoff agrees with Heybeck, but opines that the total price will be lower than Heybeck's cited price. (Rec. Doc. 26-1, at 4.) As to item 19, Tcherneshoff opines that he recommends a different methodology to remedy the problem. *Id.*

Item 26 is the men's bathroom near section 109. Heybeck finds that the "measured ground surface within the required door maneuvering clearance is 16.6% in lieu of a maximum of 1:48 or 2.1%." (Rec. Doc. 24-7, at 52.) However, Tcherneshoff states, "[M]y understanding from discussions with park management is that this gate into the men's toilet room remains open during all events. Therefore, this is simply an accessible route and not technically a door. The measurement taken of 16.6% is on the left side of the opening and, since people with disabilities will not need to sit in that area to open the gate, this correction will not be necessary." (Rec. Doc. 26-1, at 5.)

Items 33 and 40 involve drinking fountains. As to item 33, the drinking fountain near section 116, Heybeck finds that the "drinking fountain outlet height is 37 inches in lieu of a maximum of 36 inches." (Rec. Doc. 24-7, at 66.) As to item 40, the drinking fountain near section 123, Heybeck finds that the spout outlet height is 38 inches, instead of 36 inches. *Id.* at 80. Tcherneshoff agrees with Heybeck's findings but proposes that the fountains be removed altogether. (Rec. Doc. 26-1, at 5.)

Item 37 is the women's restroom near section 123. Heybeck finds that the "baby changing station is at a height of 40 inches in lieu of 28 to 34 inches." (Rec. Doc. 24-7, at 74.) Tcherneshoff agrees but contests the price of lowering the changing station. (Rec. Doc. 26-1, at 5.)

With respect to items 17, 19, 33, 37 and 40, the experts agree that the items violate the ADA. They only disagree on remedies. However, Defendant has not shown that Heybeck's proposed remedies will be structurally impracticable, Therefore, Plaintiff is entitled to summary judgment on those items. With respect to the remaining items, the experts disagree on whether they violate the ADA. Viewing all of the evidence in a light most favorable to the Defendant, the Court finds that a reasonable trier of fact could find for the non-moving party based on the reasonable conclusions of Defendant's expert. *See Tatum*, 2016 WL 852458, at *8 (citing *Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272, 273 (5th Cir. 1991)).

Defendant did not create genuine issues of material fact as to the following items: 1, 3, 17, 18, 19, 20, 21, 22, 23, 24, 27, 28, 29, 30, 31, 32, 33, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, and 45. Thus, Plaintiff is entitled to summary judgment on those items. Summary judgment is denied as to items 2, 4, and 26.

**II. The path of travel alteration requirement**

Title II also provides a heightened standard for alterations that affect or could affect the usability of or access to an area

of a facility that contains a primary function. 28 C.F.R. § 35.151(b)(4). A primary function is "a major activity for which the facility is intended." *Id.* at (b)(4)(i). A path of travel is "a continuous, unobstructed way of pedestrian passage by means of which the altered area may be approached, entered, and exited, and which connects the altered area with an exterior approach (including sidewalks, streets, and parking areas), an entrance to the facility, and other parts of the facility." *Id.* at (b)(4)(ii). The path of travel to the altered area and its restrooms, telephones, and drinking fountains should be readily accessible and usable to individuals with disabilities to the maximum extent feasible. *Id.* at (b)(4). However, the public entity need not comply with the "maximum extent feasible" standard if the cost and scope of the alterations is disproportionate to the cost of the overall alteration. *Id.* The cost of alterations will be deemed disproportionate when "the cost exceeds 20% of the cost of the alteration to the primary function area." *Id.* at (b)(4)(iii)(A).

    Plaintiff claims that the modifications to the Stadium made after Hurricane Katrina affected the primary functions of the Stadium, triggering the path of travel requirements. Plaintiff argues that Defendant did not make the requisite modifications to the following barriers: inaccessible parking (items 1-4, 14, 15, 17-19, and 50 of Heybeck's report), inaccessible ramp and entrance (items 7-9, 16, and 25), inaccessible drinking fountains (items 33

11

and 40), inaccessible restrooms (items 26-32 and 41-45), inaccessible assembly seating (item 46), inaccessible countertops (items 11-13), and inaccessible curb cuts and outside routes (items 6, 10, 48, and 49). With the exception of item 46, Defendant does not contest that the barriers are subject to the path of travel requirements. However, Defendant contests Heybeck's conclusions as to the following items: 2, 4, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 19, 26, 33, 40, 46, 48, 49, and 50.

Heybeck's report provides prima facie evidence that the path of travel requirements were not met. To defeat Plaintiff's motion for summary judgment, Defendant must show that the altered area is readily accessible and usable or that the cost of alterations is disproportionate to the overall cost. As discussed above, Defendant has shown the existence of genuine issues of material fact as to items 2, 4, 26, and 37. Defendant failed to raise genuine issues of material fact as to items 17, 19, 33, and 40. The Court will discuss the remaining contested items below.

Item 6 consists of the bus stop area. Heybeck reports: "The measured slope of the ground surface within the 96 inch long by 60 inch wide boarding and alighting area is 8.3%. In addition the ground surface has non-compliant changes in level due to broken, cracked and settling concrete. The changes in level are approximatelly [sic] 1.5 inches." (Rec. Doc. 24-7, at 12.) Items 7 and 8 involve curb ramps on the side of the access road to the

Stadium. On the south side of the road, Heybeck finds "large non-compliant changes in level of 1.5 inches between the concrete ramp, curb and asphalt road surface." *Id.* at 14. On the north side, he observes "large non-compliant changes in level of 1 inch at the bottom of the ramp surface." *Id.* at 16. Tcherneshoff opines that items 6, 7, and 8 are property of the City of New Orleans, which is not named in this case as a Defendant. (Rec. Doc. 26-1, at 3.)

Tcherneshoff reaches a similar conclusion as to items 9 and 10. Item 9 is the curb ramp on the north side of the access road to the stadium. (Rec. Doc. 24-7, at 18.) Item 10 is the accessible route along the access road into the stadium. *Id.* at 20. Tcherneshoff opines that Defendant does not own this part of the sidewalk. (Rec. Doc. 26-1, at 3.) Tcherneshoff believes Tad Gormley Stadium is responsible for repairing the ramp. *Id.*

Items 11 and 12 involve the ticket sales trailer. Heybeck finds that the "measured service counter height is 48 inches in lieu of a maximum height of 36 inches." (Rec. Doc. 24-7, at 22.) With respect to the route leading to the ticket sales trailer, Heybeck finds that consists of "a dirt surface and moveable rubber mats and pieces of plywood beneath the rubber mats. The surface is non-firm and non-slip resistant. The area of the rubber mats and plywood has non-compliant changes in level and gaps in the rubber mat area. Especially in times of rain the route will be extremely slippery and likely non-passable for an individual in a

wheelchair." *Id.* at 24. Tcherneshoff states that Defendant will require standing ticket sellers so that disabled persons will not have to purchase tickets at the trailer. (Rec. Doc. 26-1, at 3.)

Item 48 consists of the route from the ticketing trailer to the Stadium entrance. Heybeck found that "there is no direct accessible route from the ticketing sales trailer to the entrance of the facility." (Rec. Doc. 24-7, at 96.) Heybeck also reported noncompliant changes in level route near the gates. *Id.* Tcherneshoff opines that the addition of standing ticket sellers will make Heybeck's recommendations unnecessary. (Rec. Doc. 26-1, at 6.)

Items 14 and 15 consist of the accessible designated parking space at the southwest side of the Stadium. Heybeck finds that it does not have the required vehicular identification signage. (Rec. Doc. 24-7, at 28.) Also, Heybeck reports that the "access aisle width is 28 inches in lieu of a minimum of 60 inches." *Id.* at 30. Item 16 is the curb ramp on southwest side of the Stadium. Heybeck finds that the "measured right side flare slope is 14.9% in lieu of a maximum of 10%." *Id.* at 32. Tcherneshoff does not challenge this finding. His recommendation differs from Heybeck's: Tcherneshoff recommends eliminating the space entirely. (Rec. Doc. 26-1, at 4.) Without the space, Tcherneshoff opines that the curb ramp will not be used by people with mobility impairments, so further changes are unnecessary. *Id.*

Item 46 is the assembly area accessible seating areas. Heybeck opines that the Defendant is required to maintain 144 wheelchair-accessible seats. (Rec. Doc. 24-7, at 92.) The Stadium currently has only four wheelchair areas, containing twenty-eight spaces, but none of them are marked on the ground surface. *Id.* Tcherneshoff believes that requiring 144 accessible seats would be an undue burden on Defendant and would fundamentally alter the goods and services offered at the Stadium. (Rec. Doc. 26-1, at 6.) Tcherneshoff also suggests that the path of travel requirement does not apply to this area because the seating section was not altered after Hurricane Katrina. *Id.*

Item 49 consists of the accessible route from the gates to the Stadium. Heybeck reports: "Currently an individual in a wheelchair is directed by signage to the south end of the stadium to a curb ramp at the south end of the [S]tadium. This route requires a long traverse along the vehicular way while ambulatory individuals can directly access the sidewalk upon crossing the parking lot within the gated area. The [two] routes do not coincide to the maximum extent feasible." (Rec. Doc. 24-7, at 98.) Tcherneshoff agrees with Heybeck's report. (Rec. Doc. 26-1, at 6.) Tcherneshoff suggests that all accessible parking spaces will be located directly in front of the Stadium entrance. *Id.* He also proposes that the path onto the concrete will be smooth without changes in level. *Id.* at 6-7. Further, he states that the sign will be removed

15

and that access will be provided at several points through the access aisles. *Id.* at 7.

Item 50 involves general parking during large events, such as Tulane football games. (Rec. Doc. 24-7, at 100.) Heybeck finds that parking is provided in the grass areas surrounding the Stadium and the inner parking lots adjacent to the Stadium are closed. *Id.* Thus, the only accessible parking is in the east side paved parking lot, which has only six spaces. *Id.* Tcherneshoff reports that park management will require the gates leading to accessible spaces to remain open so that more are available. (Rec. Doc. 26-1.)

With respect to Items 6, 7, 8, 9, and 10, genuine issues exist as whether Defendant owns these items or is responsible for ensuring that they are ADA-compliant. With the respect to the remaining items, genuine issues exist as to whether Defendant's recommendations comply with the maximum extent feasible standard. Further, genuine issues exist as to whether item 46 is subject to the path of travel requirement. Thus, summary judgment on these items is inappropriate at this time.

### III. The program access standard

Title II provides that a "public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a). However, a public entity is not necessarily required to

16

make each of its existing facilities accessible and usable. *Id.* at (a)(1). The Supreme Court described the ADA's requirements as follows:

> Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility. But Title II does not require States to employ any and all means to make . . . services accessible to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs. It requires only "reasonable modifications" that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service. As Title II's implementing regulations make clear, the reasonable modification requirement can be satisfied in a number of ways. . . . [I]n the case of older facilities, for which structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services. Only if these measures are ineffective in achieving accessibility is the public entity required to make reasonable structural changes. And in no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or effect a fundamental alteration in the nature of the service.

*Tennessee v. Lane*, 541 U.S. 509, 531-32 (2004).

Plaintiff argues that Defendant failed to comply with the program access standard. Plaintiff cites to the fifty mobility-related barriers in Heybeck's report, which Defendant has not removed. Further, Plaintiff contends that Defendant is not pursuing any alternatives to barrier removal, such as relocating

17

services and assigning aides to helps persons with disabilities. The only items on Heybeck's report not previously accounted for are items 5, 34, and 47. Defendant only contests item 5. Because Plaintiff's expert report provides prima facie evidence of a violation, Defendant has the burden of creating a genuine issue of material fact for trial.

Item 5 consists of the ticket service counters at Gate 5A. Heybeck finds that the two counters were 51.5 inches high rather than the requisite 36 inches. (Rec. Doc. 24-7, at 10.) Tcherneshoff opines that City Park management will require a ticket seller that stands outside the ticket box to serve Gate 5A. (Rec. Doc. 26-1.) Thus, Heybeck's recommendations are unnecessary. *Id.* The Court finds that Defendant raises a genuine issue of material fact that precludes summary judgment as to item 5. Defendant introduced evidence that it is pursuing an alternative to barrier removal. However, Defendant failed to raise genuine issues of material fact as to items 34 and 47. Thus, Plaintiff is entitled to summary judgment on those items.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Partial Summary Judgment* is **GRANTED in part and DENIED in part**. Defendant did not create genuine issues of material fact as to the following items: 1, 3, 13, 17, 18, 19, 20, 21, 22, 23, 24, 25, 27, 28, 29, 30, 31,

32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, and 47. Thus, Plaintiff is entitled to summary judgment on his ADA claims as to the foregoing items.

New Orleans, Louisiana this 27th day of April, 2015.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE